**In re Jean Paul SCHOOFS and Basma Schoofs Sakkejha, Debtors.**

**AMERICAN EXPRESS CENTURION BANK, Plaintiff,**

v.

**Jean Paul SCHOOFS, Defendant.**

Bankruptcy No. 89–00698.

Adv. No. 89–0109.

United States Bankruptcy Court, District of Columbia.

Feb. 26, 1990.

Janet M. Nesse, Washington, D.C., for plaintiff.

Madeline A. Trainor, Joiner, Green & Trainor, Alexandria, Va., for defendant.

## OPINION REGARDING MOTION TO DISMISS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

On November 14, 1989, the plaintiff American Express Centurion Bank filed the dischargeability complaint commencing this adversary proceeding. The defendant Jean Paul Schoofs moves to dismiss the adversary proceeding as untimely. Bankruptcy Rule 4007(c) provides a deadline for filing a dischargeability complaint but significantly provides that notice must be given of the time so fixed. The defendant urges that an amended notice issued before expiration of the bar date and setting forth the wrong date is inconsequential. The Court disagrees.

### FACTS

The defendant and his wife filed a petition under Chapter 7 of the Bankruptcy Code on August 7, 1989. On August 11, 1989, pursuant to 11 U.S.C. § 341(a), the Clerk of the Bankruptcy Court caused to be served on all creditors and parties in interest a notice styled:

### CHAPTER 7 NO ASSET

### ORDER FOR MEETING OF CREDITORS, COMBINED WITH NOTICE THEREOF AND OF AUTOMATIC STAY

The notice gave the date of the § 341(a) meeting as September 7, 1989, identified the interim trustee as David B. Tatge, and further correctly stated:

> NOVEMBER 6, 1989 IS FIXED AS THE LAST DAY FOR FILING COMPLAINTS OBJECTING TO THE DISCHARGE OF THE DEBTOR(S) AND COMPLAINTS TO DETERMINE THE DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523(C).

On August 11, 1989, Mr. Tatge filed a praecipe rejecting his appointment as trustee "on the basis of conflict of interest." On August 16, 1989, the United States trustee appointed Nelson J. Kline successor interim trustee. Apparently because Mr. Kline's next date for holding meetings of creditors as a Chapter 7 trustee was September 14, 1989, the clerk issued a new notice on August 18, 1989, to give notice of September 14 as the new meeting date. The new notice had the caption:

\* \* \* AMENDED NOTICE—PLEASE NOTE NEW TRUSTEE AND NEW HEARING DATE \* \* \*

## CHAPTER 7 NO ASSET

### ORDER FOR MEETING OF CREDITORS, COMBINED WITH NOTICE THEREOF AND OF AUTOMATIC STAY

This new notice stated that a meeting of creditors pursuant to 11 U.S.C. § 341(a) was set for September 14, 1989, identified Mr. Kline as the interim trustee, and erroneously stated:

NOVEMBER 14, 1989 IS FIXED AS THE LAST DAY FOR FILING COMPLAINTS OBJECTING TO THE DISCHARGE OF THE DEBTOR(S) AND COMPLAINTS TO DETERMINE THE DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523(C).

On November 14, 1989 (the erroneous deadline for filing dischargeability complaints provided in the clerk's amended notice), 68 days after the date first set for the § 341(a) meeting of creditors, the plaintiff filed its "Complaint to Determine Dischargeability of Debt," pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). The plaintiff received the amended notice of August 18, 1989, prior to November 6, 1989. Subject to the defendant's right to present evidence to the contrary after discovery is completed, the parties agree that the plaintiff was unaware of the actual bar date rule when it received the amended notice and filed the complaint on November 14, 1989, in reliance thereon.

### DISCUSSION

The time for filing dischargeability complaints is governed by Bankruptcy Rule 4007(c) which provides:

(c) A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held

pursuant to § 341(a). *The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided by Rule 2002.* On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

(Emphasis added.) Bankruptcy Rule 4004 provides essentially identical requirements regarding complaints objecting to a debtor's discharge.[1]

The Bankruptcy Rules thus establish "the first date set" for the meeting of creditors pursuant to 11 U.S.C. § 341(a) as the cornerstone for determining the bar date for filing discharge and dischargeability complaints, regardless of whether the meeting is actually held then or whether the debtor or his representative fails to appear. *See, e.g., In re Rhodes*, 61 B.R. 626, 628–29 (9th Cir. BAP 1986); *In re Bartlett*, 87 B.R. 445 (Bankr.W.D.Ky.1988). Rules 4004 and 4007(c), in conjunction with Bankruptcy Rule 9006(b)(3), plainly contemplate that the filing deadline irrevocably falls 60 days after "the first date set" unless enlargement of the filing period is sought by a party in interest before the deadline arrives.

Courts are divided on whether discharge or dischargeability complaints filed after the bar date set by Bankruptcy Rules 4004(a) and 4007(c) are nevertheless timely when the filing after the deadline is due to reliance upon erroneous information or silence about the bar date in a notice supplied by the clerk. *Compare Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987) (complaint dismissed even though notice left space for bar date blank and attorneys relied upon verbal assurance by employees of clerk's office that no bar date set); *In re Kearney*, 105 B.R. 260 (Bankr.E.D.Pa.1989) (complaint dismissed even though untimely filing was due to reliance upon erroneous notice of bar date by clerk of court); and *In re Anwiler*, 99 B.R. 41 (Bankr.S.D.Cal. 1989) (change of venue prior to first credi-

---

1. Rule 4004(a) establishes an identical bar date and a requirement of not less than 25 days notice thereof. Rule 4004(b) sets forth a virtually identical rule on extensions.

tors' meeting does not extend bar date set by transferor court; untimely complaint dismissed even though filed in reliance upon erroneous notice of new bar date provided by clerk of transfer court); *with In re Riso*, 57 B.R. 789, 792 (D.N.H.1986) (complaint allowed: within court's equitable power to allow filing of objection to discharge by erroneous date set forth in a second notice by clerk's office); *Matter of Hershkovitz*, 101 B.R. 816 (Bankr.N.D.Ga. 1989) (same); *In re Sibley*, 71 B.R. 147 (Bankr.D.Mass.1987) (complaint timely when filed by erroneous date set forth in notice of meeting of creditors); *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr.S.D.N.Y.1986) (complaint allowed: bar date not triggered due to absence of bar date in first notice; not a question of extending time); *Matter of Hickey*, 58 B.R. 106 (Bankr.S.D.Ohio 1986) (complaint timely when filed by erroneous date set forth in notice of meeting of creditors). *See also South Dakota Cement Plant v. Jimco Ready Mix Co.*, 57 B.R. 396 (D.S.D.1986) (absent issuance of notice, bar date ineffective); *In re Cintron*, 101 B.R. 785, 786 (Bankr.M.D.Fla.1989) (untimely complaint dismissed "absent clerical errors or mistakes in previous court orders") (*dicta*); *In re Klein*, 64 B.R. 372 (Bankr.E.D.N.Y.1986) (concluding the judicial prerogative to extend filing deadline precluded but, in *dicta*, recognizing exceptions).

The courts holding that they are powerless to excuse untimely filings made in

reliance upon clerical error have given little or no weight to the clear mandate of Rules 4004 and 4007 that notice of the filing deadlines *shall* be given by the clerk of court.[2] In the process those courts interpret the rules as stating: "The clerk shall give notice of the bar deadlines, but, if he does not or makes an error in doing so, the lack of correct notice leaves the filing deadlines unaffected." The drafters could easily have included such a provision, as was partially done in Rule 77(d) of the Federal Rules of Civil Procedure.[3] They did not. The rules simply place a burden of giving notice of the bar dates for filing discharge and dischargeability complaints upon the clerk. The rules do not provide that the clerk's failure to do so places the burden upon the creditors to interpret the rules and ascertain the actual bar date for themselves. As stated in *Schwartz & Meyers*, 64 B.R. at 953, the notice requirement "negates any presumption that creditors are familiar with the time limits provided by Rule 4007(c)." The notice requirement guards against the severity of the short deadlines with which most creditors would be unfamiliar.

In other words, the rules unequivocally require that notice of the deadline for filing discharge and dischargeability complaints "shall" be given. That means notice of the correct bar date. To hold that the notice requirement is satisfied if creditors receive notice of conflicting bar dates, the errone-

---

**2.** Rules 4004 and 4007 provide that notice shall be given to the parties in interest in accordance with Rule 2002 which states in relevant part:

> (f) OTHER NOTICES. [T]he clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of ... (5) the time fixed for filing a complaint objecting to the debtor's discharge pursuant to § 727 of the Code as provided in Rule 4004; (6) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007....
> Bankr.R. 2002(f).

**3.** That rule states in relevant part:

> Immediately upon entry of an order or judgment the clerk shall service a notice of the entry by mail ... upon each party who is not in default for failure to appear....  * * *

Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed....")
Fed.R.Civ.Pro. 77(d). Prior to 1946 Rule 77(d) did not include its last sentence. In *Hill v. Hawes*, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), the Supreme Court reasoned that—

> It is true that Rule 77(d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given.

The Supreme Court on this basis upheld the District Court's vacating of an order for which no notice was given and issuance of a new order from which an appeal was timely prosecuted. Rule 77(d) was amended in 1946 specifically to avoid situations such as arose in *Hill v. Hawes*.

**4**

ous one following the first, would render the notice requirement meaningless.

The Court holds the actual bar date inapplicable if the plaintiff innocently relied on the amended notice in filing late. Support for this holding is found in *West v. United States*, 222 F.2d 774 (D.C.Cir.1954). In *West* the clerk of the district court sent West a notice dated October 20, 1952, apprising him of the denial of a motion, but not of the actual October 13 date of denial. West relied upon October 20 as the date of denial and filed for appeal within 60 days of that date but not within the deadline under the rules of 60 days after entry of the order. The Court of Appeals reasoned that West "could reasonably assume that information furnished him by an official of the District Court was correct." *Id.* at 779. To avoid an "extremely harsh" result, the Court of Appeals ruled that the notice of appeal was timely, even though filed more than 60 days after entry of the order. *Id.* The Court of Appeals reached this result despite the seemingly ironclad provisions of Rule 77(d) of the Federal Rules of Civil Procedure that lack of notice of the entry by the Clerk does not affect the time to appeal, stating:

> Whatever may be the effect under Rule 77(d) of a notice merely late rather than both late and incorrect, . . . we adhere to the view . . . that where a notice has misled one in the position of West to rely upon an incorrect date of the order from which an appeal is sought, the time within which application must be made for permission to appeal should commence to run from the date relied upon.

*Id.* at 780.[4]

The Court must respectfully reject the view that "reliance upon information provided by a court clerk which contradicts a rule of procedure is not reasonable" and that a creditor with an erroneous amended notice ought to be time-barred because he "is in a position to compare the information provided with the procedural rules and, if uncertain, file a protective motion before the 60 day deadline expires." *Kearney*, 105 B.R. at 265–66. Unquestionably, the need for early certainty in the debtor's "fresh start" by requiring determination of dischargeability complaints is an important consideration implicit in the rule's short deadline and in the prohibition of post-bar date motions to extend. *See id.* at 264. Nevertheless, those needs are outweighed by the extremely harsh injustice that ready disregard of the notice requirement would visit on an innocent creditor unfamiliar with the rule's short deadline.[5] Bankr.R. 1001 ("rules shall be construed to secure a just, speedy and inexpensive determination of every case and proceeding"); *Schwartz & Meyers*, 64 B.R. at 955 (balancing minimal harm to the debtor against drastic harm to the creditor); *Riso*, 57 B.R. at 793 (correction of clerk's mistake allowed to prevent manifest injustice); *accord, Hershkovitz*, 101 B.R. at 819.[6]

The Court finds distinguishable or unpersuasive the three decisions which reach contrary or seemingly contrary results: *Neeley, Anwiler,* and *Kearney*. In *Neeley* the plaintiff received a notice which left the space for the bar dates blank. 815 F.2d at 346. The Court of Appeals held that the plaintiff's complaint was nevertheless untimely. The reasoning in *Neeley* is questionable and in any event distinguishable. *Neeley* rejects the view that compliance with the notice requirements is necessary

---

**4.** In *Matter of Hickey*, 58 B.R. at 108, the court, in holding timely a dischargeability complaint filed on the erroneous deadline date in the clerk's notice, relied upon a ruling similar to *West* in *Crawford v. West India Carriers, Inc.*, 56 F.R.D. 32 (S.D.Fla.1972) (one-day late F.R.Civ.P. 59 motion held timely based on smudged docketing stamp).

**5.** The debtor is required to be sent all bar date notices. Bankr.R. 2002(f). If the debtor feels aggrieved by a notice setting forth an erroneous bar date, the debtor can promptly move to miti-

gate the harm. Here the August 18 notice could have been corrected as late as October 7 to give notice of the actual bar date of November 6 and still have satisfied the 30–day minimum notice required by Rule 4007(c).

**6.** Both *Riso* and *Hershkovitz* rely on 11 U.S.C. § 105 as authority justifying their holdings. This Court doubts that its equitable powers under § 105 can ever override a Bankruptcy Rule and rests its ruling instead on its construction of Rule 4007(c).

to trigger the bar date as against those who rely on the absence of a bar date in the notice they receive.[7] *Neeley* appears to view such reliance as always unreasonable and to give little consideration to the implicit premise of the notice requirement that creditors are presumed generally to be unaware of the bar date computation rules. Moreover, *Neeley* attempts to justify its holding by stating that allowing late filing in the case of a defective notice would be inconsistent with 11 U.S.C. § 523(a)(3)(B).[8] *Neeley* ultimately rests on the proposition that, even if the court's file contains no notice setting forth a bar date, creditors aware of the case—both those who receive a deficient notice and those who do not—have an obligation to inquire further than just the court's files (by examining the Bankruptcy Rules and discovering the 60–day computation rule). Whatever the mer-

its of that uncertain proposition, it does not extend to creditors given affirmative notice of an erroneous date. *Neeley* recognized as much by emphasizing: "[W]e do not ... suggest that the notice provision is without force to prevent an obvious injustice to the creditor" 815 F.2d at 347. In the footnote to this statement the court added:

> For example, today's case is not one in which the Clerk gave an affirmative but erroneous notice of a bar date upon which the creditor might reasonably have relied. [Citations omitted.]

*Id.* at 347 n. 5.

Although *Anwiler*, 99 B.R. at 41, is on point, it simply relies upon decisions dealing with the inability of the Bankruptcy Court *to extend* the bar date once it has passed and not upon the effect of failure of the clerk to give proper notice.[9]

---

7. In disagreeing explicitly with *Schwartz & Meyers* (and, implicitly, with *South Dakota Cement Plant*) on this score the Court of Appeals cited two cases as holding that dismissal is warranted even when the clerk does not notify the creditor of the deadline. But in the first of the two cited cases the creditor learned of the bankruptcy case and would have discovered the bar date notice upon examining the Court's file. *In re Rhodes*, 61 B.R. 626, 627, 630 (9th Cir. BAP 1986) (bar date was correctly listed on the notice on file). And in the other, while the clerk never issued a notice of the bar date, the clerk entered a discharge order stating that no timely dischargeability complaint had been filed and the plaintiffs filed their dischargeability complaint over 5 months later. *In re Tosenberger*, 67 B.R. 256 (Bankr.N.D.Ohio 1986). Plainly the *Tosenberger* plaintiffs' continued reliance on the absence of a bar date notice was unreasonable.

8. Section 523(a)(3)(B) concerns creditors who receive no notice but become aware of the case in time to file a dischargeability complaint. To protect their rights, such creditors would examine the Bankruptcy Court's file to ascertain the bar date. Upon discovering the defective bar date notice, they would be in the same position as those creditors who had received the defective notice (namely, in the position of not receiving the benefit of the required notice of the actual bar date). Thus, holding that defective notice is ineffective to trigger the bar date does not necessarily place creditors receiving the defective notice in a superior position to those who merely learn of the case in time to inquire into their rights. Inconsistent treatment only arises if the § 523(a)(3)(B) creditor is required to inquire beyond the Court's file.

9. For example, in the first two cited cases—*In re Lewis*, 71 B.R. 633 (Bankr.N.D.Ill.1987), and *In re Richards*, 43 B.R. 554 (Bankr.D.Minn.1984), aff'd sub nom. *F & M Marquette Nat. Bank v. Richards*, 47 B.R. 423 (D.Minn.), rev'd, 780 F.2d 24 (8th Cir.1985)—the courts found that proper notice had been sent and the bar dates had expired *prior to* the issuance of new notices listing erroneous bar dates. Plainly, such notices are ineffective to amend an earlier valid notice. Similarly, the notice in *In re Barr*, 47 B.R. 334 (Bankr.E.D.N.Y.1985), gave notice on February 15, 1984, of the correct bar date. It was of no consequence that the same notice erroneously stated that the petition had been filed October 20, 1984, an obvious impossibility. When counsel missed the bar date, the court properly could not extend the bar date based on an excusable neglect argument that he mistakenly thought that October 20, 1984, could only be a bar date. The case of *In re Kirsch*, 65 B.R. 297 (Bankr.N.D.Ill.1986), involved no erroneous notice but reliance by the creditor's agents on a docket entry that erroneously described an extension of the bar date granted in favor of certain other creditors. The cases of *In re Smolen*, 48 B.R. 633 (Bankr.N.D.Ill.1985), and *In re Shelton*, 58 B.R. 746 (Bankr.N.D.Ill.1986), involved no erroneous notice issue whatsoever. Finally, in *Matter of Hill*, 48 B.R. 323 (N.D.Ga. 1985), a first notice had been issued which correctly listed the bar date. A second notice had later been sent resetting the § 341 meeting of creditors. "This notice was silent as to the date for filing of complaints objecting to discharge and complaints seeking a determination of the dischargeability of a debt." *Id.* at 324. The second notice in *Hill*, therefore, did not amend the earlier notice.

Part III of the opinion in *Kearney*, 105 B.R. at 263–66, is also on point but similarly relies on cases (aside from *Neeley* and *Anwiler*) dealing with the *extension* issue instead of the notice issue.[10]

## CONCLUSION

Because the evidence to date is that the plaintiff relied on the erroneous notice without knowledge that it was in error, the Court can not grant the defendant's motion to dismiss. An appropriate order follows.

10. *Kearney* relies on various cases cited in *Anwiler*. *Kearney* cites additionally *In re Hill*, 811 F.2d 484 (9th Cir.1987). In *Hill* the creditor filed his complaint *after* the erroneous date set forth in the clerk's notice and the Court of Appeals declined to extend the bar date due to a scheduling error. *Kearney* further cites *In re Gardner*, 55 B.R. 89 (Bankr.D.C.1985). But in *Gardner* the Court limited its decision to the question of whether an erroneous notice could be treated as a valid *extension* of the bar date. Plainly the notice could not so serve because no order had been entered for an extension. The Court stated: "[T]his Court has not considered possible alternative arguments that [the creditor] might have made but has not made, such as equitable estoppel or justifiable reliance." *Id.* at 91 n. 1. *Gardner* dealt only with the Court's power to *extend* and not the question of whether the bar date is ineffective when improper notice is relied upon. Thus, *Gardner* is not contrary to the ruling here.