# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No.   01-6013WM

In re:                                         *
                                               *
Marilyn M. Moss, a/k/a Marilyn M.              *
Bryant, a/k/a Marilyn Margaret                 *
Bryant, a/k/a Marilyn Moss Bryant,             *
a/k/a M. Margaret Bryant, a/k/a                *
Marilyn Wall Bryant, a/k/a Margaret            *
Whitman Bryant, a/k/a Margaret                 *
"Peggy" Whitman, a/k/a Margaret                *
Whitman "Peggy" Bryant, a/k/a                  *
Margaret Bryant, a/k/a Marge Bryant,           *
a/k/a Mari Bryant, a/k/a Mary Bryant,          *
a/k/a Anne Bryant, a/k/a Anne Whitman,         *
a/k/a P.M. Whitman, a/k/a Anne                 *
Margaret Whitman, a/k/a Anne M.                *
Whitman Bryant, a/k/a Anne Margaret            *
Whitman Bryant, a/k/a Anne Margaret            *
Whitman Bryant Trust, a/k/a M.                 *
Whitman Bryant, a/k/a M. Margaret              *
Whitman Bryant, a/k/a Catherine L.             *
Whitman, a/k/a Bryant Family Trust,            *
a/k/a Solutions, Inc., a/k/a Santa Barbara     *
Mortgage Co., Inc., a/k/a National             *
Supply Corporation, a/k/a TCI                  *
Industries, a/k/a TCI Investments, a/k/a       *
T.N. Ayrb Inv. Co., a/k/a Transpacific         *
Conservancy, Inc., a/k/a M. Margaret           *
Whitman Bryant Trust Dated April 18,           *
1997, a/k/a M. Margaret Whitman                *
Bryant Trust Dated May 18, 1997                *
                                               *
       Debtor,                                 *

|  |  |  |
|---|---|---|
| Steven C. Block, Trustee, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Court for the |
| | * | Western District of Missouri |
| Marilyn M. Moss, | * | |
| | * | |
| Defendant-Appellant. | * | |

Submitted:  August 9, 2001
Filed:  September 10, 2001

Before KRESSEL, SCHERMER and SCOTT, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Marilyn M. Moss (the "Debtor"), appeals the bankruptcy court[1] ruling finding that Steven C. Block's (the "Trustee") Complaint Objecting to Dischargeability of Debts (the "Complaint") was timely filed and denying the Debtor's discharge under 11 U.S.C. § 727(a).  We have jurisdiction over this appeal from the final orders of the bankruptcy court.  See 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm.

---

[1]The Honorable Jerry W. Venters, United States Bankruptcy Court for the Western District of Missouri.

## ISSUES

The issues on appeal are whether: (1) the Trustee's Complaint was timely filed; and (2) the Trustee proved any of the 11 U.S.C. § 727(a) exceptions to discharge by a preponderance of the evidence. We conclude that the Trustee's Complaint was timely and that the Debtor's discharge should be denied.

## BACKGROUND

Approximately ten years ago, the Debtor filed a sexual harassment lawsuit in California against her employer. The Debtor was originally represented by the law firms of Burton & Norris and Gronemeier & Barker (the "Law Firms"), but discharged the Law Firms and hired Peggy Garrity before the case went to trial. When the lawsuit was settled after a month long trial, the Debtor received $3,000,000.00. The Debtor paid Ms. Garrity's fees plus costs and expenses.

Ms. Garrity also represented the Debtor in a lawsuit against the Law Firms in state court for breach of contract, malpractice, and negligent infliction of emotional distress with regard to the handling of the Debtor's sexual harassment case. The Law Firms counterclaimed that the Debtor owed them substantial attorney fees. The matter was submitted to arbitration (The "Arbitration").

The Debtor transferred a substantial sum of her proceeds from the sexual harassment settlement to accounts in her name and her parents' names and she purchased an automobile. She also established corporations with her proceeds from the settlement. The Debtor later transferred more of her assets to the corporations as the Arbitration began to advance. One such corporation purchased a house in California (the "House").

-3-

At Arbitration, the Law Firms were awarded $654,833.33 in fees and interest. The California Superior Court affirmed the Arbitration award and also awarded the Law Firms additional fees.

Thereafter, the Law Firms served the Debtor with an order to appear for a judgment debtor examination. The Debtor filed for relief under Chapter 7 of the Bankruptcy Code the next day in the United States Bankruptcy Court for the Central District of California. She failed to disclose a significant portion of her assets.

The Debtor then distributed her assets, including her proceeds from the settlement, to different corporations, investments, and trusts that she established. She often shifted the assets from one place to another. The Debtor also transferred assets including ownership interests and liens in the House to individuals with several different names, such as Marilyn Margaret Bryant. Those individuals were alter egos for the Debtor. In addition, she made purchases without the court's permission.

Only well after filing for bankruptcy relief did the Debtor amend her bankruptcy schedules to disclose that she owned the corporations with total assets of $1,317,000.00 and that a family trust had significant assets. She also stated that three corporations were established for her support.

Eventually, the Debtor converted her Chapter 7 case to one under Chapter 11. While the Debtor was still in bankruptcy under Chapter 11, she appealed the California Superior Court's decision upholding the Arbitration award. The California Court of Appeals affirmed the California Superior Court's decision for the amount awarded at the Arbitration but reversed the decision to the extent that it gave additional fees to the Law Firms. On remand the California Superior Court entered a modified judgment ordering the Debtor to pay the Law Firms the amount specified at the Arbitration plus interest. The Debtor then disclosed to the bankruptcy court, United States Trustee, and an attorney for the Law Firms that she had a number of

investments. She did not disclose where those investments were held or the fact that they were not held in her name. She claimed that they were exempt because they were traceable to her personal injuries in the sexual harassment case.

The Debtor challenged a proof of claim filed by the Law Firms for the amount of fees awarded to them by the state court. The bankruptcy court allowed the Law Firms' proof of claim because it found that the state court proceedings had a res judicata effect. After the bankruptcy court dismissed the Debtor's Chapter 11 proceeding on May 26, 1996, the Debtor transferred the title of the House to one of the corporations. She also purchased property for one of the corporations using one of her alter egos. Insurance and property titles were then obtained using combinations of the Debtor's alter egos, the corporations' names, and the names of trusts established by the Debtor.

The Law Firms filed a renewed motion to have the Debtor appear for a judgment debtor examination. When the Law Firms filed a fraudulent transfer action against the Debtor, she unsuccessfully attempted to remove it to federal court. The Debtor failed to appear for a judgment debtor examination and was later found in contempt of court.

On the Debtor's second appeal of the award to the Law Firms to the California Court of Appeals, the court held for the Law Firms. The district court in which the sexual harassment proceeding was brought denied a request made by the Debtor to remove the attorney fee proceeding to that court and it remanded the proceeding to state court.

The Debtor created two charitable trusts in the names of one of her alter egos. Both trust instruments contained the same terms. Although the Debtor claimed that she transferred all of her property to the trusts, neither instrument reflected that. The Debtor continued to use several of the names she used for herself and names of trusts

to insure and register her vehicles and she transferred funds to bank accounts in the different individual names and names of corporations and trusts.

Meanwhile, on August 6, 1998, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code, listing as her address a mail box facility located in the Western District of Missouri. She listed liabilities totaling $977,191.11, including the debt owed to the Law Firms, in her schedules and petition. Her assets were listed at $2,775.00.

Immediately after filing for bankruptcy relief, the Debtor filed a Disabled Debtor Ex Parte Application for 30-day Continuance of Creditors' Meeting and Accommodation Under Americans with Disabilities Act (the "Application") in which she stated that she was diagnosed with multiple sclerosis in 1993. The Debtor sought to be excused from her meeting of creditors and offered, instead, to answer any questions in writing. She claimed in her Application that in the past year "not only have I lost the use of my legs and my ability to control my bowel and bladder, but now my vocal cords are useless and I have difficulty speaking." Doctor Joseph Lindsay's declaration was incorporated into the Debtor's Application. That declaration stated that Moss "suffers with advanced symptoms of multiple sclerosis including loss of the use of her legs and control of her bowels and bladder," that in the past year her vocal cords "have been affected by the progressive nerve damage resulting in her inability to speak," and that it was not possible for the Defendant to travel at that time.

The Law Firms filed a Motion for Relief seeking leave to proceed with the causes of action in California state court to execute on the House owned by the Debtor. Although the court planned to hold an expedited hearing at the Law Firms' request, the hearing had to be continued because they were not able to serve the Debtor.

After the Debtor failed to attend her section 341 meeting, she filed her Application and the United States Trustee and the Law Firms opposed her Application. The Debtor did not attend the hearing on the Motion for Relief but, instead, the day before the hearing she filed an objection and a request that she be discharged from her debts. The court granted the Law Firms' Motion for Relief and denied the Debtor's request for a discharge. The bankruptcy court[2] stated that she was troubled with the irregularities that had come to light in the case and announced that the filing deadlines for 11 U.S.C. §§ 523 and 727 complaints objecting to discharge and dischargeability were extended indefinitely. On October 16, 1998, the court entered an order to that effect.

The court then ordered the Debtor to provide information, including: the names she had used in the past ten years; a full description of her medical disability; and contact information for Dr. Lindsay. The Debtor next filed a Notification of Death of Debtor Marilyn Moss with the court stating that the Debtor had died in the emergency room on November 15, 1998, after suffering from a brain aneurysm and that Jonathan Lindstrom was the administrator of Marilyn Moss's last will and testament. The Notification of Death stated that the few assets in the debtor's estate were to be used to pay for her coffin and tombstone.

A federal grand jury indicted the Debtor on two counts of bankruptcy fraud pursuant to 18 U.S.C. § 152 for filing the Application and the Notification of Death. After a judicial determination of the Debtor's mental competency was made at the Debtor's request, the district court found that a medical examination showed that the Debtor was suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the criminal proceeding against her and rendering her unable to assist in her defense.

---

[2]The Honorable Karen See, United States Bankruptcy Judge for the Western District of Missouri.

In response to the Trustee's Motion for Appointment of a Guardian *Ad Litem* or Next Friend of Debtor pursuant to Bankruptcy Rule 1016, the bankruptcy court appointed a limited guardian (the "Limited Guardian") to serve until the Debtor was capable of participating in her bankruptcy case competently. The court dismissed the Debtor's untimely appeal of the appointment of the Limited Guardian. When the Debtor continued to file documents in her case without the permission of the court or the Limited Guardian, the Limited Guardian requested that the court reevaluate the Debtor's competency. The district court found that the Debtor was competent to participate in her criminal proceedings and after a hearing, the bankruptcy court also entered an order finding that she was also competent to participate in her bankruptcy case. The court terminated the limited guardianship. Since that time, the Debtor has represented herself in bankruptcy court.

In reliance on the court's order indefinitely extending the deadline for filing complaints objecting to discharge and dischargeability, the Trustee filed an objection to the dischargeability of the Debtor's debts under 11 U.S.C. §§ 727 (a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(D), (a)(5), and (a)(6)(A) (the "Complaint") on April 7, 2000. On July 18, 2000, the Debtor filed a motion for summary judgment on the Trustee's Complaint. The summary judgment motion objected to the order indefinitely extending the deadline for filing objections to discharge and dischargeability. The Debtor claimed that because the bankruptcy court should not have entered that order, the Trustee's Complaint was untimely and should be dismissed. The Debtor also argued that the Trustee's Complaint should be dismissed because venue was improper and that there were no transfers within a year of filing the petition for relief that would support a section 727(a)(2) claim.

The bankruptcy court held consolidated hearings on the summary judgment motion and the Complaint on November 15 through 17, 2000. That bankruptcy court concluded that, based on Bankruptcy Rules 4004(a), 4004(b), and 9006(b)(3), Judge See's order indefinitely extending the deadlines for filing section 523 and 727

complaints should be set aside. The court, however, entered an order denying the summary judgment motion and holding that the court had authority pursuant to 11 U.S.C. § 105(a) to find that the Complaint was timely because the Trustee relied on Judge See's order. In addition, the court granted judgment in favor of the Trustee and denied a discharge to the Debtor based on each of the section 727 grounds.

The Debtor filed a timely notice of appeal arguing: (1) that the bankruptcy court lacked jurisdiction to decide the issues in the Trustee's Complaint because they were time-barred; and (2) that the Trustee cannot prevail on his section 727 arguments because there were no transfers of property within one year of filing the petition.

## STANDARD OF REVIEW

This Court reviews *de novo* the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013; <u>McDaniel v. Riverside County Department of Child Support Services</u>, 264 B.R. 531, 533 (B.A.P. 8th Cir. 2001); <u>Gateway Pac. Corp. v. Expeditors Int'l of Washington, Inc.</u>, 153 F.3d 915, 917 (8th Cir. 1998); <u>Martin v. Cox (In re Martin)</u>, 140 F.3d 806, 807 (8th Cir. 1998); <u>Gourley v. Usery (In re Usery)</u>, 123 F.3d 1089, 1093 (8th Cir. 1997). A determination of whether the bankruptcy court properly allowed a complaint filed after the statutory deadline is a legal conclusion to be reviewed *de novo* by this Court. Whether the Trustee proved any exceptions to discharge under section 727 is also a question of law.

DISCUSSION

## **Bankruptcy Court's Determination that the Complaint was Timely Filed**

The Debtor argues that the bankruptcy court lacked the "power," "authority," or "jurisdiction" under 11 U.S.C. § 105(a) to entertain the Trustee's Complaint because it was not timely filed. We disagree and find that the bankruptcy court properly determined that the Trustee's Complaint was timely because the Trustee reasonably relied on the order extending the time for filing complaints objecting to discharge.

Generally, a complaint objecting to a debtor's discharge under 11 U.S.C. § 727(a) must be filed within sixty days of the first date set for the meeting of creditors under Section 341(a). Rule 4004(a) of the Federal Rules of Bankruptcy Procedure states:

> In a Chapter 7 liquidation case, a complaint objecting to a debtor's discharge under 11 U.S.C. § 727 (a) shall be filed no later than 60 days after the first date set for the meeting of the creditors under 11 U.S.C. § 341(a).

However, on motion of a party in interest, after hearing on notice, a court may extend the time period in which complaints objecting to discharge may be filed as long as the motion is filed before the time for the filing of a complaint objecting to discharge has expired. Fed. R. Bankr. P. 4004(b). A court may not extend the time period sua sponte. Fed. R. Bankr. P. 9006(b)(3).

We have previously held that Rule 4004 is "analogous to statutes of limitations." KBHS Broadcasting Co., Inc. v. Sanders (In re Bozeman), 226 B.R. 627, 630 (B.A.P. 8th Cir. 1998). Accordingly, it is not jurisdictional but, rather, subject to the defenses

of waiver, estoppel and equitable tolling.  See e.g. Europeon Am. Bank v. Benedict (In re Benedict), 90 F.3d 50, 54 (2nd Cir. 1996).

The bankruptcy court entered its order of October 16, 1998 extending the deadline within which to file a complaint objecting to discharge under Section 727. Whether it did so appropriately is a matter not before us.  The Supreme Court has held that "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based upon its decisions are to be respected."  In re Celotex, 514 U.S. 300, 313, 115 S. Ct. 1493, 131 L. Ed. 2d 403.  If the Debtor believed that the order extending the deadline was improper, she should have challenged it in the bankruptcy court and then appealed it.  Id.  By collaterally attacking an order of the court, a party undermines the "orderly process of the law."  Id.

The order extending the deadline was not appealed nor was the bankruptcy court asked to reconsider its ruling.  As such it remained in full force.  The Trustee was well within his duty of Section 704(6) to rely upon the court order extending the deadline and he did so.

## 11 U.S.C. § 727

The Trustee objected to the Debtor's discharge under sections 727 (a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(D), (a)(5), and (a)(6)(A) of the Bankruptcy Code. To prevail on a claim for denial of discharge under section 727, the objector need only prove that one, not all, of the section 727(a) exceptions to discharge exists.  11 U.S.C. § 727.  Nevertheless, the bankruptcy court explained why the Trustee was entitled to relief based on all seven of the subsections of section 727 cited by the Trustee.

According to the Debtor, because there were false statements in the bankruptcy court's memorandum opinion, the court incorrectly found that there were transfers of

property within one year in violation of 11 U.S.C. § 727. We hold that the bankruptcy court's legal conclusion that the Trustee proved that he was entitled to relief under each of the seven subsections of section 727 cited was correct for the reasons stated in the bankruptcy court's opinions in the adversary proceeding on appeal as well as in a fraudulent conveyance adversary filed in this case.

## CONCLUSION

The bankruptcy court had the authority to find that the Trustee filed a timely Complaint. The bankruptcy court's conclusion that it has the power under section 105 to find that a complaint is timely filed where the circumstances so require was legally correct. The court acted appropriately by exercising its section 105 authority in this case. The conclusion that the Debtor should be denied a discharge pursuant to section 727(a) was also legally correct.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT